# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRAD S. FRANCIS and<br>CHRISTINE C. FRANCIS,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 20-1392 (RBW) |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Brad S. Francis and Christine C. Francis, who are proceeding <u>pro se</u>, bring this civil action pursuant to the Freedom of Information Act ("the FOIA"), 5 U.S.C. § 552, against the defendant, the Internal Revenue Service ("IRS"). <u>See</u> First Amended Complaint ("Am. Compl.") ¶¶ 1–9, ECF No. 37. Currently pending before the Court are the defendant's motion to dismiss or for summary judgment, <u>see</u> Defendant's Motion for Dismissal and/or Summary Judgment on All Remaining Causes of Action Pleaded in Plaintiffs' First Amended Complaint ("FAC") ("Def.'s. Mot.") at 1, ECF No. 65, and the plaintiffs' cross-motion for summary judgment, <u>see</u> Plaintiffs' Motion for Summary Judgment on All Remaining Causes of Action Pleaded in the First Amended Complaint ("FAC") ("Pls.' Mot.") at 1, ECF No. 68. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's motion and deny the plaintiffs' cross-motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant[']s[] Memorandum in Support of Motion for Dismissal and/or Summary Judgment on All Thirteen (13) Remaining Counts Pleaded in the First Amended Complaint ("FAC") ("Def.'s Mem.") at 1, ECF No. 65-3; (2) the Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant[']s[] Motion for Dismissal and/or Summary Judgment[] and in Support of Plaintiffs' Cross[-]Motion for Summary Judgment on All Thirteen Remaining Counts Pleaded in the First Amended Complaint ("FAC") ("Pls.' Mem.") at 1, ECF No. 68-1;

(continued . . .)

# I.    BACKGROUND

As this Court noted in an earlier opinion, "[t]he plaintiffs are no strangers to the federal court system[,]" and have "initiated a number of legal challenges related to their tax returns, both in this Court and in other courts."  Francis v. Internal Revenue Serv., Nos. 19-cv-949 (RBW), 19-cv-3177 (RBW), 2020 WL 3129030, at *2 (D.D.C. June 12, 2020) (Walton, J.).  The Court previously described the relevant background in detail regarding the legal disputes between the parties, see id., and therefore will not reiterate that information again here.  The Court will, however, briefly discuss the procedural posture pertinent to the resolution of the pending motions.

After briefing on a prior motion to dismiss, on November 22, 2022, the Court issued a Memorandum Opinion and Order wherein it dismissed claims against several co-defendants and ordered the parties to appear for a status conference to determine how the parties wished to proceed in this case.  See Memorandum Opinion at 10 (Nov. 22, 2022), ECF No. 47; Order at 1 (Nov. 22, 2022), ECF No. 48.  The parties were then directed to file joint status reports apprising the Court of the status of this case on March 6, 2023, see Order at 1 (Dec. 21, 2022), ECF No. 51, and on April 28, 2023, see Minute ("Min.") Order (Mar. 7, 2023).  In their April joint status report, the parties indicated that they had agreed to dismiss Count One of the Amended

---

(. . . continued)
(3) the Defendant's Combined: (1) Reply in Support of Motion for Dismissal and/or Summary Judgment on All Thirteen (13) Remaining Counts in the First Amended Complaint ("FAC"); and (2) Opposition to Plaintiffs' Cross-Motion for Summary Judgment on All Remaining Thirteen (13) Counts in the FAC ("Def.'s Reply") at 1, ECF No. 70; (4) the Defendant's Errata for: Defendant's Combined: (1) Reply in Support of Motion for Dismissal and/or Summary Judgment on All Thirteen (13) Remaining Counts in the First Amended Complaint ("FAC"); and (2) Opposition to Plaintiffs' Cross-Motion for Summary Judgment on All Remaining Thirteen (13) Counts in the FAC ("Def.'s Errata") at 1, ECF No. 72; and (5) the Plaintiffs' Reply in Support of Their Cross Motion for Summary Judgment on All Thirteen (13) Remaining Counts in the First Amended Complaint ("Pls.' Reply") at 1, ECF No. 73.

Complaint, see Joint Status Report at 1, ECF No. 54, which the Court dismissed as moot soon

thereafter, see Order at 1 (May 5, 2023), ECF No. 55.

With those actions having been taken by either the Court or the parties, the following

FOIA requests remain outstanding: (1) a request for "the IDRS [("Integrated Data Retrieval

System")] Action History for [the] tax period [that] ended [on] December 31, 2018[,]" Am.

Compl. ¶ 61 ("Count Two"); (2) a request for "the Substitute-For-Return ('SFR'), Form 13496

IRC 6020(b) Certification, or its automated counterpart for [the] tax period ending [on]

December 31, 2017[,]" id. ¶ 84 ("Count Three"); (3) a request for the SFR, "Form 13496 IRC

6020(b) Certification, or its automated counterpart, or any other such document purporting to act

or take the place of a [SFR] for [the] tax period ending [on] December 31, 2013[,]" id. ¶ 99

("Count Four"); (4) a request for "all documents related to Activity SPX-00005 by Action

Employee 0922744401 on Action Date 03212018 for [the] tax period ending [on] December 31,

2017[,]" id. ¶ 111 ("Count Five"); (5) a request for "all documents related to Program Codes

91853, 91854, and 91855[,]" id. ¶ 131 ("Count Six"); (6) a request for "all documents related to"

twelve IRS issue numbers, id. ¶ 151 ("Count Seven"); (7) a request for "all items located in the

UNIDENTIFIED REMITTANCE FILE ('URF') for tax periods 2018, 2017, 2016, 2015, 2014,

2013, 2012, 2011, and 2010[,]" id. ¶ 171 ("Count Eight"); (8) a request for "certain Andover,

Massachusetts employee names, organizational function[s,] and SEIDs [("Standard Employee

Identifier" numbers")] that had made entries on the IDRS regarding the [plaintiffs'] tax return for

[the] tax period ending [on] December 31, 2017[,]" id. ¶ 194 ("Count Nine"); (9) a request for "a

copy of the A[ppeal] C[ase] M[emo] related to LTR105C dated March 25, 2019, for [the] tax

period [that] ended [on] December 31, 2014[,]" id. ¶ 216 ("Count Ten"); (10) a request for "a

copy of the A[ppeal] C[ase] M[emo] related to LTR105C dated March 13, 2019, for [the] tax

period [that] ended [on] December 31, 2015[,]" <u>id.</u> ¶ 465 ("Count Eleven"); (11) a request for

"the full text of 'CVPN/ARG 44' as used on [the command code] TXMODA[,]" <u>id.</u> ¶ 499

("Count Twelve"); (12) a request for "Form 8278 Assessment and Abatement of Miscellaneous

Civil Penalties for [the] tax period [that] end[ed on] December 31, 2017[,]" <u>id.</u> ¶ 527 ("Count

Thirteen"); and (13) a request for "a copy of Activity Documents related to 41 IDRS entries in

TXMODA for Activity CORRRCVD [(meaning "correspondence received")] or related activity

such as REASSIGN[ (another activity code appearing on the plaintiffs' tax return),]" <u>id.</u> ¶ 539

("Count Fourteen").

On May 30, 2024, the defendant filed its motion to dismiss of or summary judgment on

the above-referenced remaining counts of the Amended Complaint.  <u>See generally</u> Def.'s Mot.

On July 5, 2024, the plaintiffs filed their combined cross-motion for summary judgment and

opposition to the defendant's motion.  <u>See generally</u> Pls.' Mot.  On August 2, 2024, the

defendant filed its reply in support of its motion for dismissal or for summary judgment and

opposition to the plaintiffs' cross-motion, <u>see generally</u> Def.'s Reply, and finally on August 29,

2024, the plaintiffs filed a reply in support of their cross-motion, <u>see generally</u> Pls.' Reply.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction[,]" <u>Kokkonen v. Guardian Life</u>

<u>Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'"

<u>Morrow v. United States</u>, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting <u>Haase v.</u>

<u>Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if

it "lack[s] [ ] subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be

presumed that a cause lies outside [the Court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377,

the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court

has subject-matter jurisdiction, <u>see</u> <u>Nurse v. Sec'y of Air Force</u>, 231 F. Supp. 2d, 323, 326

(D.D.C. 2002) (Walton, J.) (citations omitted).

 "In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations

of the complaint." <u>Grand Lodge of the Fraternal Ord. of Police v. Ashcroft</u>, 185 F. Supp. 2d 9,

14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it

deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

<u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); <u>see</u> <u>Jerome</u>

<u>Stevens Pharms., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Additionally, the Court must "assume the truth of all material factual allegations in the complaint

and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can

be derived from the facts alleged[.]'" <u>Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.</u>, 642 F.3d

1137, 1139 (D.C. Cir. 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d 970, 972 (D.C. Cir. 2005)).

However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in

resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for failure to state

a claim." <u>Grand Lodge</u>, 185 F. Supp. 2d at 13–14 (first and second alterations in original)

(internal quotation marks omitted).

**B.     Rule 56 Motion for Summary Judgment**

 A court may grant a Rule 56 motion for summary judgment only if "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must view the

evidence in the light most favorable to the non-moving party. <u>Holcomb v. Powell</u>, 433 F.3d 889,

895 (D.C. Cir. 2006) (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150

(2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's

favor and accept the non-moving party's evidence as true. <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or

denials." <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at

248). Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue

of fact." <u>Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.</u>, 185 F.3d 898, 908 (D.C. Cir.

1999) (Garland, J., concurring) (alteration in original) (quoting <u>Exxon Corp. v. Fed. Trade

Comm'n</u>, 663 F.2d 120, 126–27 (D.C. Cir. 1980)). If the Court concludes that "the non-moving

party has failed to make a sufficient showing on an essential element of [its] case with respect to

which [it] has the burden of proof," then the moving party is entitled to summary judgment.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). At bottom, "in ruling on cross-motions for

summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties

is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."

<u>Shays v. Fed. Election Comm'n</u>, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

    "FOIA cases typically are resolved on a motion for summary judgment." <u>Ortiz v. U.S.

Dep't of Just.</u>, 67 F. Supp. 3d 109, 116 (D.D.C. 2014). "FOIA requires federal agencies to

disclose, upon request, broad classes of agency records unless the records are covered by the

statute's exemptions." <u>Students Against Genocide v. U.S. Dep't of State</u>, 257 F.3d 828, 833

(D.C. Cir. 2001). In a FOIA action, the defendant agency has the "burden of demonstrating that

the withheld documents are exempt from disclosure[.]" <u>Boyd v. Crim. Div. of U.S. Dep't of

Just.</u>, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted). "In a FOIA case, summary

judgment may be granted to the government if 'the agency proves that it has fully discharged its

obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" <u>Friends of Blackwater v. U.S. Dep't of Interior</u>, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting <u>Greenberg v. U.S. Dep't of Treasury</u>, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt from [disclosure].'" <u>Students Against Genocide</u>, 257 F.3d at 833 (omission in original) (quoting <u>Goland v. Central Intel. Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1978)).

"In a FOIA case, a court may grant summary judgment based solely on . . . an agency's affidavits or declarations when they 'describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" <u>Powell v. Internal Revenue Serv.</u>, 280 F. Supp. 3d 155, 160 (D.D.C. 2017) (second omission in original) (quoting <u>Larson v. Dep't of State</u>, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" <u>SafeCard Servs., Inc. v. Secs. & Exch. Comm'n</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting <u>Ground Saucer Watch, Inc. v. Central Intel. Agency</u>, 692 F.2d 770, 771 (D.C. Cir. 1981)).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" <u>U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press</u>, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.    ANALYSIS

The defendant argues that it is entitled to summary judgment on all thirteen of the outstanding counts of the Amended Complaint for three primary reasons: (1) "three Counts (i.e., Counts Four, Nine, and Twelve) are legally infirm and do not support FOIA jurisdiction[,]" Def.'s Mem. at 1; (2) "for four Counts (i.e., Counts Two, Six, Seven, and Twelve), the [defendant] conducted a reasonable search and released all responsive records located in full, and those Counts are now moot[,]" id. (footnote omitted); and (3) "[for] seven [of the] Counts (i.e., Counts Three, Five, Eight, Ten, Eleven, Thirteen, and Fourteen), the [defendant] conducted a reasonable search but did not locate any responsive records[,]" id.  In response, the plaintiffs argue that they are entitled to summary judgment because "for ten Counts (i.e., Counts Two, Three, Five, Six, Seven, Eight, Ten, Eleven, Thirteen, and Fourteen)[,] the defendant has failed to conduct a reasonable search, or failed to make a full disclosure, and [the] plaintiffs have produced material[] facts establishing the existence of the documents sought for release[,]" Pls.' Mot. at 1, and "for three Counts (i.e., Counts Four, Nine, and Thirteen)[,] the defendant has failed to establish [that] the counts are legally infirm and failed to produce the documents sought for release[,]" id.

The Court will first address whether Counts Two, Six, and Seven are moot before addressing whether it must dismiss Count Four[2] for the failure to exhaust administrative remedies.  The Court will then address whether Counts Nine and Twelve were proper FOIA

---

[2] Although the defendant characterizes Count Four of the Amended Complaint as jurisdictionally defective, as the Court explains in Section III.B, infra, a requester's failure to exhaust administrative remedies under the FOIA is not a jurisdictional bar to relief—rather, a requester's failure to exhaust administrative remedies renders a FOIA claim devoid of relief that can be awarded.  See Hidalgo v. Fed. Bureau of Investigation, 344 F.3d 1256, 1259 (D.C. Cir. 2003) ("[E]xhaustion, although not jurisdictional, is [a] 'condition precedent' to filing suit[.]") (quoting Taylor v. Appleton, 30 F.3d 1365, 1367–68 (11th Cir. 1994)); 5 U.S.C. § 552(a)(6)(C).  Accordingly, the Court separately considers whether Count Four properly states a claim in light of the alleged failure to exhaust.

requests before finally addressing whether the defendant conducted an adequate search with regard to the remaining counts.[3]

## A.    Whether Counts Two, Six, and Seven Are Moot

The Court first addresses whether Counts Two, Six, and Seven are moot in light of the defendant's representation that it has properly responded to the plaintiffs' requests as alleged in the Amended Complaint.  For each of these counts, the defendant represents that "[it] conducted a reasonable search [after the plaintiffs had already initiated this litigation] and released all responsive records located in full, and those Counts are now moot."  Def.'s Mem. at 1.  In response, the plaintiffs largely contend that the defendant has unlawfully concealed records that should have been disclosed, see Pls.' Mem. at 28–37 (addressing Counts Six and Seven), or otherwise acted in bad faith in withholding documents or delaying the processing of their requests, see id. at 9–14 (addressing Count Two).  The Court will address each argument in turn.

"Article III's limitation of federal-court jurisdiction to cases and controversies requires that 'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed.'"  Bayala v. U.S. Dep't of Homeland Sec., Off. of Gen. Couns., 827 F.3d 31, 34 (D.C. Cir. 2016) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013)).  Thus, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed and must be

---

[3] As an initial matter, the plaintiffs contend that "[the d]efendant waive[d P]rivacy [A]ct defenses[,]" Pls.' Mem. at 4, because it did not reference the Privacy Act in its motion, see id. at 4–5.  Conversely, the defendant notes that the only count in the plaintiffs' Amended Complaint that references the Privacy Act is Count One, which the Court dismissed pursuant to the parties' agreement.  See Def.'s Reply at 3–4; Am. Compl. ¶¶ 19–59; Order at 1 (May 5, 2023).  Indeed, the plaintiffs allege that all of the remaining counts in the Amended Complaint arise under the FOIA, rather than under the Privacy Act.  See generally Am. Compl.  Moreover, as the plaintiffs acknowledge, "[t]he adequacy of an agency's search for records 'is analyzed under the same standard' for purposes of both FOIA and the Privacy Act."  Lamb v. Millenium Challenge Corp., 334 F. Supp. 3d 204, 210 (D.D.C. 2018) (quoting Thompson v. U.S. Dep't of Just., 146 F. Supp. 3d 72, 82 (D.D.C. 2015)); see Pls.' Mem. at 7.  Thus, because the parties have agreed to the dismissal of the plaintiffs' unambiguously pleaded Privacy Act claim, and because the Court must nonetheless address the FOIA claims under the same standard, the Court rejects the plaintiffs' attempts to have the Court construe their outstanding FOIA requests under the Privacy Act.

dismissed as moot." Id. (first alteration in original) (quoting Genesis Healthcare Corp., 569 U.S. at 72). "In the FOIA context, that means that once all the documents are released to the requesting party, there no longer is a case or controversy." Id.; see Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."). This is "[b]ecause the [FOIA] only authorizes a court 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" Harvey v. Lynch, 123 F. Supp. 3d 3, 7 (D.D.C. 2015) (quoting 5 U.S.C. § 552(a)(4)(B)). Therefore, "[o]nce the records are produced[,] the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." Perry, 684 F.2d at 125 (quoting Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980)).

Here, the Court concludes that Counts Two, Six, and most of Count Seven are moot because, although the plaintiffs argue that there are additional records that the defendant may have concealed, "purely speculative claims about the existence and discoverability of other documents" does not defeat the "presumption of good faith" to which the declarants, relied upon by the defendant, are entitled. Ground Saucer Watch, 692 F.2d at 771. First, as to Count Two, the defendant represents in a declaration that "six pages were released in full to [the p]laintiffs on December 1, 2022[,]" Def.'s Mem. at 12, and that "[n]o responsive records were withheld, in part or in whole, and [that the IRS's Chief Counsel,] Mr. [Andrew] Keaton[,] does not know of any additional location that might be reasonably searched for responsive records[,]" id.; Def.'s Mot., Exhibit ("Ex.") (Second Declaration of Andrew Keaton ("2d Keaton Decl.")) ¶¶ 18–19, ECF No. 65-4. The plaintiffs dispute that there were no other locations the defendant could have searched, see, e.g., Pls.' Mem. at 15 (arguing that the defendant failed to search the Master File

Tax Code ("MFT") 30 database); however, the plaintiffs "are not entitled 'to dictate, through search instructions, the scope of [the IRS's] search,'" <u>Montgomery v. Internal Revenue Serv.</u>, 40 F.4th 702, 715 (D.C. Cir. 2022) (alteration in original) (quoting <u>Mobley v. Cent. Intel. Agency</u>, 806 F.3d 568, 582 (D.C. Cir. 2015)).  Indeed, the plaintiffs cannot make such a demand of the defendant because "an express demand that an agency search a specific record system in a FOIA request does not automatically obligate an agency to do so."  <u>Cato Inst. v. Fed. Bureau of Investigation</u>, 638 F. Supp. 3d 13, 20 (D.D.C. 2022); <u>see</u> <u>Campbell v. U.S. Dep't of Just.</u>, 164 F.3d 20, 28 (D.C. Cir. 1998) (quoting <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990)) ("[T]he agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'").

Similarly, as to Count Six, the defendant represents that "Mr. Keaton conducted a reasonable multi-step search . . . that resulted in locating and releasing [ ] four pages to [the p]laintiffs that include[d] descriptions of [the IRS's Organization, Function, and Program] [(']OFP[')] codes 91853, 91854, and 91855."  Def.'s Reply at 12 (internal quotation marks omitted); <u>see</u> Am. Compl. ¶ 131 (requesting the release of "all documents related to Program Codes 91853, 91854, and 91855").  And, as the defendant notes, "OFP codes are not input into [the defendant's Automated Data Processing system or] [(']ADP[')] or [the Integrated Data Retrieval System or] [(']IDRS[')]."  Def.'s Reply at 12 (quoting Def.'s Mot., Ex. (2d Keaton Decl.) ¶ 39).  Moreover, "OFP codes [not only] are not input into the ADP or IDRS systems[,] [but] one cannot [even] search a specific taxpayer's account by OFP code."  Def.'s Mot., Ex. (2d Keaton Decl.) ¶ 39.  Thus, the defendant's multi-step search uncovered all the documents that could be uncovered based upon the request made by the plaintiffs.  Above all, the plaintiffs'

assertion that the defendant failed to release information from an alleged "OFP [ ] database master table of all program codes[,]" Pls.' Mem. at 30, is without merit because the defendant represents that this database was in fact searched, even though the defendant did not refer to it by that name. See Def.'s Reply, Ex. (Third Declaration of Andrew Keaton ("3d Keaton Decl.")) ¶ 6, ECF No. 70-1 ("[Keaton] did search what [the p]laintiffs' Opposition refers to as the 'OFP database,' although [he] did not refer to it by that title in [the] Second [Keaton] Declaration.").

Last, eleven of the twelve documents at issue in Count Seven are moot because responsive records for those documents have been located and wholly released to the plaintiffs. See Am. Compl. ¶ 165 (requesting the release of twelve documents with specific issue numbers identified therein); Def.'s Mem. at 24 (explaining that two-hundred and eight pages of documents were located with respect to eleven of the twelve issue numbers and were released to the plaintiffs on August 24, 2023); Def.'s Mot., Ex. (2d Keaton Decl.) ¶¶ 53–54 (explaining the same). The plaintiffs concede that documents attributable to five of the issue numbers were released, but dispute whether the remaining six were released to them. See Pls.' Mem. at 30. However, again, the plaintiffs do not sufficiently rebut the good faith presumption to which the defendant is entitled for the declaration it submitted, wherein the defendant specifically indicated that eleven of the twelve issue numbers were released to the plaintiffs. See Def.'s Reply, Ex. (3d Keaton Decl.) ¶ 10 ("[The p]laintiffs seem to assert that the [defendant] did not release all records located for the five [i]ssue [n]umbers . . . . [The p]laintiffs' assertion is incorrect. For the [eleven i]ssue [n]umbers for which [the] search located responsive records, the [defendant] released all records located[.]"). Thus, the Court concludes that Count Seven of the Amended Complaint is moot only as to the documents related to eleven of the twelve issue numbers identified in that count.

Accordingly, the Court dismisses as moot Counts Two and Six in their entirety.  See Bayala, 827 F.3d at 34 ("[O]nce all the documents are released to the requesting party, there no longer is any case or controversy.").  But, because documents related to one of the issue numbers in Count Seven returned no responsive documents, see Def.'s Mem. at 24, out of an abundance of caution, the Court will address whether the search the defendant conducted for those documents was adequate, see infra, Section III.D.3.

**B.    Whether the Plaintiffs Exhausted Their Administrative Remedies as to Count Four**

The Court next addresses whether the plaintiffs exhausted their administrative remedies in regards to Count Four of the Amended Complaint.  The defendant argues that in regards to Count Four, "[it] provided its final determination that it had located no records on December 12, 2019[,]" and, "[the p]laintiffs did not take any administrative appeal from the [defendant]'s final determination[.]"  Def.'s Mem. at 16.  On this point, the defendant argues that "the Court must dismiss [C]ount Four because of lack of jurisdiction."  Def.'s Reply at 10.  The plaintiffs respond that "[the] defendant was not owed any exhaustion of administrative remedies because they were following the advice of [defendant employee,] Ms. [Amanda] Fowers[,]" who told them that administrative appeals "d[id] not apply in th[at] situation."  Pls.' Mem. at 24 (emphasis omitted).  The plaintiffs further contend that "[they] had already exhausted administrative remedies on December 12, 2019, which was twenty days plus [the statutory] ten-day extension past the request date of October 28, 2019."  Id.  The Court will address these arguments in turn.

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."  Hidalgo v. Fed. Bureau of Investigation, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting Oglesby, 920 F.2d at 61); see also 5 U.S.C.

§ 552(a)(6).  "However, absent an express statutory provision to the contrary, failure to exhaust is not 'an automatic bar to judicial review.'"  Lopez v. Nat'l Archives & Recs. Admin., 301 F. Supp. 3d 78, 86 (D.D.C. 2018) (quoting Oglesby, 920 F.3d at 61).  Indeed, "the exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so."  Hidalgo, 344 F.3d at 1258.  However, "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar."  Id. at 1258–59 (quoting Oglesby, 920 F.2d at 61).  Specifically, in this Circuit, courts have held that the administrative scheme within the FOIA "'requires each requestor to exhaust administrative remedies' prior to filing suit."  Lopez, 301 F. Supp. 3d at 86 (quoting Hidalgo, 344 F.3d at 1259); see Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d 180, 182 (D.C. Cir. 2013) ("As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress."); see also Amadis v. U.S. Dep't of State, 971 F.3d 364, 372 (D.C. Cir. 2020) (same).

"Under the statute, the agency has twenty days to determine if it will comply with the [FOIA] request, and it must notify the requestor of this decision."  Lopez, 301 F. Supp. 3d at 86 (citing 5 U.S.C. § 552(a)(6)(A)(i)).  "The agency's response should include its 'determination of whether or not to comply with the request[,] the reasons for its decision[,]' and if the decision is adverse, notice of the requestor's right 'to appeal to the head of the agency.'"  Id. (quoting Oglesby, 920 F.2d at 65).  "Once the agency responds, 'the FOIA requestor must appeal to the head of the agency' before bringing suit."  Id. (emphasis added) (quoting Oglesby, 920 F.2d at 65).  "The agency must then make a determination on the appeal within twenty days."  Id. (citing 5 U.S.C. § 552(a)(6)(A)(ii)).  "Importantly, a requestor 'shall be deemed to have exhausted his [or her] administrative remedies with respect to [a] request if the agency fails to comply with the

applicable time limit provisions,' and the requestor files suit." Id. at 86–87 (second alteration in original) (quoting 5 U.S.C. § 552(a)(6)(C)(i)).  "But, 'if the agency responds to the FOIA request before the request[o]r files suit, the [twenty-day] constructive exhaustion provision . . . no longer applies; actual exhaustion of administrative remedies is required.'" Id. at 87 (alterations in original) (quoting Oglesby, 920 F.2d at 61).

As an initial matter, the Court first notes that, to the extent that the defendant requests that the Court dismiss Count Four for lack of jurisdiction, such a position is inconsistent with the law of this Circuit because the exhaustion requirement in the FOIA context is not jurisdictional. See Hidalgo, 344 F.3d at 1258.  As other courts in this district have concluded, "[b]ecause FOIA's exhaustion requirement is 'not a jurisdictional bar to judicial review,' an agency's argument that a FOIA request[o]r has failed to exhaust their administrative remedies is generally analyzed under Rule 12(b)(6)." Emery v. U.S. Dep't of Just., 639 F. Supp. 3d 87, 96 (D.D.C. 2022) (quoting Tereshchuk v. Bureau of Prisons, 851 F. Supp. 2d 157, 161 n.5 (D.D.C. 2012)). However, to determine whether the plaintiffs exhausted their administrative remedies as to this FOIA request, the Court must consider matters outside of the pleadings—viz., the declarations submitted by both the plaintiffs and the defendant—and therefore must treat the defendant's motion as one for summary judgment under Rule 56, rather than under Rule 12(b) or 12(c).[4] See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment[.]").

---

[4] The Court notes that because the defendant's motion was filed after the pleading stage concluded, it will consider the request made in the motion as one under Rule 12(c). See Langley v. Napolitano, 677 F. Supp. 2d 261, 263 (D.D.C. 2010) ("[A]s the standards for review are the same under either Fed. R. Civ. P. 12(b) or 12(c), courts routinely treat motions to dismiss that are filed after a responsive pleading has been made as a motion for judgment on the pleadings.").

Here, the Court concludes that the plaintiffs failed to exhaust their administrative remedies because "[t]he option for immediate judicial review 'lasts only up to the point that [the defendant] actually responds[,]'" Lopez, 301 F. Supp. 3d at 87 n.8 (quoting Oglesby, 920 F.2d at 61), and since the defendant responded to the FOIA request, "the p[laintiffs] may no longer exercise [their] option to go to court immediately[,]" Oglesby, 920 F.2d at 61. Specifically, the plaintiffs received a final, appealable determination letter from the defendant on December 18, 2019—well before they initiated this action. See Pls.' Mem. at 24; Complaint at 1, ECF No. 1 (noting the filing date of the original Complaint as May 22, 2020). Thus, if the plaintiffs disputed the defendant's final determination, they needed to appeal that decision within ninety days from receiving the final determination letter. See 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). The plaintiffs do not contest that they did not appeal or otherwise exhaust their administrative remedies; rather, they contend that they were not required to do so based upon a prior comment from Ms. Fowers in response to a question they posed seeking clarification about the range of tax years covered by the records they sought. See Pls.' Mem. at 24 (explaining that, on December 12, 2019, Ms. Fowers told the plaintiffs that "[a]n administrative appeal is limited to a denial of records, so it d[id] not apply in this situation"). However, the plaintiffs acknowledge that, in response to their questions, Ms. Fowers answered with a handwritten note that was delivered directly to the plaintiffs. See Pls.' Mot., Ex. (Declaration of Brad S. Francis ("1st Brad Francis Decl.")) ¶ 29, EFC No. 68-4. The plaintiffs acknowledge that subsequently, on December 18, 2019, they received the final determination from the defendant that no responsive records had been located pursuant to their FOIA request. See id., Ex. (1st Brad Francis Decl.) ¶ 30. Therefore, although the plaintiffs may have been seeking clarification or were otherwise advised that they were not required to appeal prior to receiving the final determination letter, once the

16

plaintiffs were on notice that a final determination had been made about their FOIA request, they were required—at that point—to appeal the defendant's decision.  See Lopez, 301 F. Supp. 3d at 87 (quoting Oglesby, 920 F.2d at 64) ("To permit [the] plaintiffs[s] to ignore [the defendant]'s directive 'would cut off the agency's power to correct or rethink initial misjudgments or errors[.]'").

Finally, the plaintiffs argue—and the defendant acknowledges—that the final determination letter sent to them was ambiguous in regard to the tax years covered in their FOIA request.  See Def.'s Reply at 10 ("The [d]efendant's December 18, 2019, final determination letter was ambiguous as to which years it covered."); Pls.' Mem. at 24.  But, as the Court indicated earlier, the plaintiffs acknowledge that they sought clarification from the defendant on the covered tax years some time before the final determination letter was mailed to them.  See id. Moreover, the defendant represents that Ms. Fowers called the plaintiffs to clarify that all of the tax years the plaintiffs sought in their requests were consolidated into the same FOIA request. See Def.'s Mot., Ex. (2d Keaton Decl.) ¶ 27 ("[T]he case notes indicate that Ms. Fowers called [the p]laintiffs on the same day the letter was mailed and explained that all four years were included under [the same] FOIA request [number].").  The plaintiffs merely respond that they "have no recollection of receiving a phone call from Ms. Fowers nor do [their] notes indicate a call was received[.]"  Pls.' Mem. at 24.  The plaintiffs' impressions about whether the phone call took place, rather than addressing the facts as alleged by the defendant, are woefully deficient to overcome the good faith presumption the Court must afford the defendant's declarant.  See Powell, 280 F. Supp. 3d at 161 ("[The plaintiffs'] hunch does not overcome the presumption of good faith afforded the [defendant]'s declarations.").  Accordingly, the Court concludes that the

plaintiffs failed to exhaust their administrative remedies as to Count Four of the Amended

Complaint, and therefore grants summary judgment to the defendant on that Count.

**C.    Whether Counts Nine and Twelve Are Proper FOIA Requests**

The Court next addresses the defendant's arguments that Counts Nine and Twelve of the

plaintiffs' Amended Complaint are improper requests under the FOIA because the requests seek

interrogatory-like responses or otherwise require the defendant to create new records in response

to the requests.  Specifically, the defendant argues that, as alleged in Counts Nine and Twelve,

the plaintiffs requested information regarding employees and certain personal identifying

information, see Def.'s Mem. at 32 ("Count Nine alleges a FOIA request seeking the name, IRS

Standard Employee Identifier (SEID) number, and organizational function for thirty (30) IRS

employees located at the IRS Campus in Andover, Massachusetts."), and the definition of an IRS

code "used to describe the basis for the civil penalty under authority of 26 U.S.C. § 6702[,]" Am.

Compl. ¶ 499; see Def.'s Mem. at 49 ("Again, [in Count Twelve, the plaintiffs] are seeking the

meaning or definition[] of [Argument Code 44 or] 'ARG 44[.]'" (quoting Def.'s Mot., Ex. (2d

Keaton Decl.) ¶ 63)).  The plaintiffs respond "that the records [they seek] already exist[,]" Pls.'

Mem. at 43, and that "[their] request is not legally infirm[,]" id. at 52.  The Court will address the

parties' arguments in turn.

"[A]n agency processing a FOIA request is not required to divine a requester's intent."

Landmark Legal Found. v. Env't Prot. Agency, 272 F. Supp. 2d 59, 64 (D.D.C. 2003).  Nor, does

the "FOIA . . . require an agency to create documents or opinions in response to a request."  Hall

& Assocs. v. Env't Prot. Agency, 83 F. Supp. 3d 92, 102 (D.D.C. 2015) (citing Nat'l Lab. Rel.

Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 161–62 (1975)); see also Powell v. Internal Revenue

Serv., 255 F. Supp. 3d 33, 43 (D.D.C. 2017) (first emphasis added) ("[The] FOIA only requires

that an agency turn over <u>records</u>, not that it provide a requestor with specific information or answer questions.").  Moreover, "an agency is [also] not required to 'answer questions disguised as a FOIA request,'" <u>Hall & Assocs.</u>, 83 F. Supp. 3d at 102 (quoting <u>Hudgins v. Internal Revenue Serv.</u>, 620 F. Supp. 19, 21 (D.D.C. 1985)), "nor conduct research in response to a FOIA request[,]" <u>id.</u>; <u>see</u> <u>id.</u> (quoting <u>Di Viaio v. Kelley</u>, 571 F.2d 538, 542–43 (10th Cir. 1978)) ("[I]t is clear that nothing in [the FOIA] requires 'answers to interrogatories' but rather and only disclosure of documentary matters which are not exempt.").

Here, the Court concludes that both of the plaintiffs' FOIA requests in Counts Nine and Twelve were improper under the FOIA.  As to Count Nine, it is clear that the core of the plaintiffs' requests sought information and not records—"functions [the] FOIA does not require."  <u>Taylor v. Internal Revenue Serv.</u>, No. 18-cv-2666 (TSC), 2020 WL 13156288, at *6 (D.D.C. Oct. 22, 2020).  Indeed, not only did the plaintiffs ask for the names and identifying information of certain employees, <u>see</u> Am. Compl. ¶ 194, the plaintiffs in the request asked the defendant to place the information in a chart that the plaintiffs provided, <u>see</u> Pls.' Mot., Ex. 9 (Plaintiffs' FOIA Request Chart) at 60–61, ECF No. 68-7.  Thus, the defendant was not obligated to respond to the request as pleaded in Count Nine.  <u>E.g.</u>, <u>Judicial Watch, Inc. v. U.S. Dep't of State</u>, 177 F. Supp. 3d 450, 455–56 (D.D.C. 2016) (holding that the defendant agency was not obligated to respond to the plaintiff's request to compile a list of employees meeting certain criteria because such a "request was actually a question posed as a request for records").

The same holds true for the request sought in Count Twelve.  That request expressly makes clear that "[they we]re seeking the meaning, or definition, of [Argument Code 44 or] 'ARG 44[,]'" Am. Compl. ¶ 499, which is a facially improper FOIA request.  Because the plaintiffs requested that the defendant clarify or define an agency term rather than produce an

19

actual record, the defendant was likewise not required to respond to this request. See Jean-Pierre v. Fed. Bureau of Prisons, 880 F. Supp. 2d 95, 103 (D.D.C. 2012) (citation omitted) ("[T]o the extent that [a] plaintiff's FOIA requests [a]re questions or requests for explanations of policies or procedures, the[y] are not proper FOIA requests.").[5]  Accordingly, the Court concludes that the defendant is entitled to summary judgment on Counts Nine and Twelve of the Amended Complaint.

**D.    Whether the Searches in Regards to the Remaining Counts Satisfy the FOIA**

The Court last considers whether the defendant conducted adequate searches for the documents requested in the remaining counts of the Amended Complaint.  The defendant argues that the detailed declarations it submitted support the conclusion that all of the searches for records in response to the plaintiffs' FOIA requests were adequate.  See Def.'s Mem. at 9.  The plaintiffs make a number of arguments in opposition to the defendant's positions that generally can be categorized into either: (1) that the defendant acted in bad faith through its false and misleading representations regarding their document requests and the searches it claims were conducted in response to those requests, see Pls.' Mem. at 37–40, 45–49, 55–59, or (2) that the defendant's searches were otherwise inadequate, see id. at 15–16, 25–28, 45–46.  The Court will first address the plaintiffs' bad faith arguments before finally determining whether the searches conducted by the defendant were adequate.

---

[5] To be sure, the defendant acknowledges that it was able to produce to the plaintiffs a document containing the definition of Argument Code 44 which, in the alternative, moots Count Twelve.  See Def.'s Mem. at 50–51.  Nonetheless, the plaintiffs respond that the "generic" document provided by the defendant still "fails to explain how [the] plaintiffs . . . are able to discern the '44' on [their] Privacy record as being the [same code appearing in the produced document.]"  Pls.' Mem. at 54.  However, because the Court ultimately concludes that the plaintiffs' FOIA request as alleged in Count Twelve was improper, it need not address whether the produced document was sufficiently responsive to moot the request.

### 1.  Bad Faith Arguments

"An agency fulfills its obligations under [the] FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "The adequacy of an agency's search for documents requested under [the] FOIA 'is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.'"  Montgomery v. Internal Revenue Serv., 514 F. Supp. 3d 125, 131 (D.D.C. 2021) (quoting Weisberg, 745 F.2d at 1485).  Consistent with the information courts may consider when ruling on summary judgment motions in FOIA cases, "the agency may submit affidavits or declarations that explain the scope and method of its search 'in reasonable detail.'"  Id. (quoting Perry, 684 F.2d at 127).  And, "[a]bsent contrary evidence, such affidavits or declarations are generally sufficient to show that an agency complied with [the] FOIA."  Id. (citing Perry, 684 F.2d at 127).  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

First, the Court concludes that all of the plaintiffs' bad faith arguments fail because they advance "purely speculative claims about the existence and discoverability of other documents[,]" Ground Sauce Watch, 692 F.2d at 771, or otherwise question the affidavits with extraneous or baseless conjecture, see Pls.' Mem. at 37–41 (explaining how an unrelated tax discrepancy demonstrates fraudulent behavior by the defendant) (Count Eight); id. at 47 (explaining the "breadcrumb[s]" of alleged bad faith communications from the defendant) (Count Ten); id. at 49 (suggesting that the defendant's response to the plaintiffs regarding their

FOIA request evinces the existence of responsive documents) (Count Eleven); id. at 55–57 (suggesting that the disclosure of some documents evinces the withholding of other documents) (Count Thirteen); id. at 58 (claiming that the defendant is "intentionally blocking" the plaintiffs by not providing responsive records) (Count Fourteen).  None of these arguments, which are unsupported by any facts, cast "substantial doubt[,]" Truitt, 897 F.2d at 542, sufficient to preclude the Court from affording a good faith presumption to the defendant's declarants, see SafeCard Servs., 926 F.2d at 1200.

The Court appreciates that the long and litigious history between the parties may have motivated the plaintiffs, who are proceeding pro se, to advance specious theories against the defendant.  But, they do nothing to support the merits of their claims, as none of these theories articulate a rational response to the defendant's explanations regarding the searches it conducted in response to the plaintiffs' FOIA requests.  Nonetheless, "[t]o the extent [the plaintiffs'] grudge boils down to a complaint that the [defendant] failed to hand over documents that [the plaintiffs] believe[] it should possess, th[ese] speculative allegation[s] speak[] [more] to the scope of the search and subsequent production[ or lack thereof]."  Guarascio v. Fed. Bureau of Investigation, No. 18-cv-2791 (CRC), 2023 WL 7182057, at *4 (D.D.C. Nov. 1, 2023).  Therefore, the Court rejects the plaintiffs' factually unsupported bad faith arguments and proceeds to the plaintiffs' arguments that seemingly call into question the adequacy of the defendant's searches.

## 2. Adequacy of the Searches

### a. Count Three

In regards to the adequacy of the searches, the Court begins by determining whether the searches conducted in response to the plaintiffs' FOIA request in Count Three was adequate.  As to Count Three, the plaintiffs requested "[a] copy of the Substitute-For-Return [or 'SFR'] made by the IRS for [the] [t]ax [p]eriod ending [on] December 31, 2017[,]" with the "Reference

Return [Document Locator Number] [('] DLN[')] 0922105632347-8[.]" Def.'s Mem. at 12–13; Am. Compl. ¶¶ 84–85.[6] The defendant assigned this request to Shaune Gilliard—an experienced employee of the defendant, see Def.'s Reply at 8, who proceeded to conduct a search utilizing specific command codes and other indicators that would have confirmed the existence of the documents sought by the plaintiffs, see Def.'s Mot., Ex. (Declaration of Shaune A. Gilliard ("Gilliard Decl.")) ¶ 17, ECF No. 65-5 (detailing that if an SFR had been prepared for the plaintiffs, the TXMODA transcript command code would have included that designation); see id., Ex. (Gilliard Decl.) ¶ 18 (explaining that the system entries lacked a "Julian Date" that would indicate that an SFR had been prepared). "Based upon th[e] detailed good faith affidavit[ of Ms. Gilliard], that provided multiple confirmations that no SFR had been created, Ms. Gilliard reasonably concluded that no responsive records existed." Def.'s Reply at 8 (citing Def.'s Mot., Ex. (Gilliard Decl.) ¶¶ 18–19). Challenging the adequacy of the search, the plaintiffs suggest that they were able to derive an SFR "assessment" through certain codes appearing on documents in their possession. See Pls.' Mem. at 18. However, to the extent that the plaintiffs perceive that there is evidence consistent with an SFR assessment having been prepared, without more, does not call into question whether the search Gilliard conducted was adequate. See Weisberg, 745 F.2d at 1485. Accordingly, the Court concludes that the defendant's search was adequate and grants summary judgment to the defendant on Count Three.

    **b.    Count Five**

    The Court next considers whether the search the defendant conducted for the FOIA request in Count Five was adequate. In this request, the plaintiffs requested "a copy of all documents related to Activity SPX-00005 by Action Employee 0922744401 on Action Date

---

[6] In paragraph 84 of Count Three of the Amended Complaint, the plaintiffs also erroneously reference the separate FOIA request that appears in Count Four.

03212018 for [the] tax period ending [on] December 31, 2017." Am. Compl. ¶ 111; Def.'s

Mem. at 17. The request "was assigned to IRS Disclosure Specialist Stacey Bess[,] who initiated

her search for any responsive records on January 16, 2020." Def.'s Mem. at 18; see Def.'s Mot.,

Ex. (Declaration of Stacey Bess ("Bess Decl.")) ¶¶ 5–6, ECF No. 65-6. "Initially, [the defendant

explains,] Ms. Bess did not understand what records [the p]laintiffs' FOIA request was seeking."

Def.'s Mem. at 18. Thus, "Ms. Bess [ ] conducted various searches of IDRS in order to better

understand what 'SPX-00005' meant." Id. (quoting Def.'s Mot., Ex. (Bess Decl.) ¶¶ 7–12). Ms.

Bess was eventually able to determine that "Activity SPX-00005" is an activity code used by the

defendant when processing an amended tax return. Id. Once she made this determination, Ms.

Bess ascertained that the amended return for the period in the plaintiffs' FOIA request designated

in Count Five was eventually categorized as a frivolous return and "was referred" to the

defendant's "Frivolous Return Program ('FRP') unit." Id. at 18–19. Because the return was

ultimately determined to be "a frivolous tax return and referred to the FRP, no additional records

(other than the computer information on IDRS retrieved via the TXMODA command code) are

generated." Id. at 19 (citing Def.'s Mot., Ex. (Bess Decl.) ¶¶ 17, 21). Therefore, the defendant

explains, the search returned no responsive records. See id.

       The plaintiffs argue that handwritten notes on tax records they have in their possession

indicate that responsive records could exist. See Pls.' Mem. at 25–27. However, the plaintiffs'

speculation cannot defeat the good faith presumption afforded to the defendant's declaration.

See Ground Sauce Watch, 692 F.2d at 771. And finally, to the extent the plaintiffs are arguing

that the defendant did not also search the proper database, see supra Section III.A, such an

argument is meritless because FOIA searches may not be dictated by the requestor, see Mobley,

806 F.3d at 582.  Accordingly, the Court concludes that the search was adequate and grants summary judgment to the defendant on Count Five.

      c.     **Count Seven**

      Next, having dismissed as moot the request in regards to documents related to eleven of the twelve issue numbers in Count Seven of the plaintiffs' FOIA request, see supra Section III.A, the Court briefly considers the adequacy of the search for the remaining issue number 1427239, see Am. Compl. ¶ 151.  As the Court previously indicated, the defendant has provided a good faith declaration explaining the search that was conducted that resulted in the production and release of over two-hundred pages to the plaintiffs.  See Def.'s Mem. at 24; Def.'s Mot., Ex. (2d Keaton Decl.) ¶ 54.  The plaintiffs contend that the defendant should have searched other file locations to find documents related to the outstanding issue number, see Pls.' Mem. at 36; however, that argument is meritless for the same reasons the Court has already explained, see Mobley, 806 F.3d at 582 ("[A] request for an agency to search a particular record system— without more—does not invariably constitute a 'lead' that an agency must pursue.").  And, as the defendant's declarant explains, "[t]hese issue numbers are specific to the FRP Master Database and do not appear in IDRS or on any version of a taxpayer's transcript."  Def.'s Mot., Ex. (2d Keaton Decl.) ¶ 51.  Thus, it is not reasonable to infer that such a search of the databases identified by the plaintiffs would have resulted in the discovery of the documents that they seek. Accordingly, the Court concludes that the search for the remaining issue number was adequate and grants summary judgment to the defendant on Count Seven.

      d.     **Count Eight**

      Next, the Court considers the adequacy of the searches regarding the FOIA requests referenced in Count Eight.  The plaintiffs first sought "a copy of all items located in the

U[nidentified] R[emittance] F[ile] ('URF') for tax periods 2018, 2017, 2016, 2015, 2014, 2013, 2012, 2011, and 2010." Am. Compl. ¶ 171.  According to "[t]he Internal Revenue Manual ('IRM'), . . . 'the [URF] . . . is a separate file within IDRS containing all remittances received that cannot be immediately identified, applied or associated to a specific taxpayer and/or tax period.'"  Def.'s Mem. at 26 (quoting IRM 3.17.10.3(1) (Nov. 22, 2017)).  These requests were also assigned to the defendant's employee, Ms. Bess, "[who] understood that [the p]laintiffs' FOIA request[s] w[ere] seeking records relating to payments [they] had purportedly made but which the [defendant] had not properly credited to their tax accounts."  See Def.'s Mot., Ex. (Bess Decl.) ¶ 27.  Ms. Bess began using certain command codes to search IDRS for responsive documents; however, "given the limited information [the p]laintiffs' FOIA request had provided, IDRS did not provide any indication of any unidentified payment credits related to [the p]laintiffs."  Def.'s Mem. at 26–27.  Because IDRS did not identify any responsive records, Ms. Bess then contacted another component division of the defendant that "is responsible for processing and managing various accounts related to tax returns and payments."  Id. at 27; see Def.'s Mot., Ex. (Bess Decl.) ¶ 34.  However, an employee in that division, Rajiv Lakhanpal, conducted a "search of the Account Management System (AMS) — which stores and retrieves tax account information" and "similarly did not provide any indication of any unidentified payments relating to [the p]laintiffs."  Def.'s Mem. at 27; see Def.'s Mot., Ex. (Bess Decl.) ¶¶ 39–40.  Bess was, at that point, "unaware of any additional reasonable search[es] that she could undertake to locate specific URF records in the absence of [the p]laintiffs supplying the purported payment amount(s) and deposit date(s)[ for the requested tax periods]."  Def.'s Mem. at 27; see Def.'s Mot., Ex. (Bess Decl.) ¶ 42.  The defendant subsequently provided the plaintiffs with a final determination letter indicating that responsive records could not be located without

additional information—<u>i.e.</u>, the payment amounts and dates of deposits.  <u>See</u> Def.'s Mem. at 27.

Rather than providing that information, the plaintiffs filed an appeal of the defendant's final

determination letter, which was ultimately rejected because the plaintiffs failed to provide the

requested information to assist in additional searches for the requested records.  <u>See id.</u> at 28.

Soon thereafter, the plaintiffs filed the second FOIA request referenced in Count Eight—

this time, providing the purported payment amounts and the dates the payments were allegedly

made.  <u>See id.</u> at 28–29; Am. Compl. ¶ 177.  This request was assigned to another employee of

the defendant, Sharon Tetrault.  <u>See</u> Def.'s Mem. at 29.  Ms. Tetrault began her search for

responsive records "by entering certain command codes into IDRS."  <u>Id.</u>  And, similar to the

prior FOIA request searches, again, the search in IDRS did not lead to the discovery of any

responsive records.  <u>See id.</u>  Ms. Tetrault then reached out to the same component division of the

defendant as did Ms. Bess upon discovering that it was responsible for processing the types of

payments purportedly submitted by the plaintiffs.  <u>See id.</u> at 29–30.  However, the component

division responded that it had conducted a search within its systems and was unable to locate any

records responsive to the plaintiffs' FOIA request.  <u>See id.</u> at 30.  Ms. Tetrault then conducted at

least two additional searches based on leads from other experienced employees and was

ultimately unable to locate any responsive records.  <u>See id.</u> at 30–31 (extensively detailing the

steps Ms. Tetrault took to locate responsive records).  Finally, Ms. Tetrault's manager, John

Carpenter, reviewed the steps she had taken in response to this request, and concluded that (1)

her search was reasonable, and (2) that there were no further locations she could have reasonably

searched to locate records responsive to the plaintiffs' request.  <u>See</u> Def.'s Mot., Ex. (Declaration

of John Carpenter ("Carpenter Decl.")) ¶¶ 24–26, ECF No. 65-7.

As the Court indicated earlier, the plaintiffs' arguments largely focus on unsubstantiated—and largely irrelevant—allegations of fraud by the defendant related to a tax dispute that the Court has already rejected.  See Pls.' Mem. at 37–41.  Nonetheless, the plaintiffs also appear to reiterate their position that the defendant should have searched other potential source locations, despite the basis for the position being reasons unrelated to their tax payment dispute with the defendant.  See, e.g., id. at 40 ("[T]he defendant has failed to perform a proper and reasonable search for the $66,889.00 in missing monies[.]").  The good faith declaration submitted by the defendant describes multi-step searches several of the defendant's employees conducted for the records sought by the plaintiffs.  See Def.'s Mot., Ex. (Carpenter Decl.) ¶¶ 10–22 (detailing the multiple databases and components that various employees searched for records).  Moreover, as the Court has stated, the plaintiffs may not dictate the databases that the defendant might have searched for the requested records.  See Mobley, 806 F.3d at 582.  Accordingly, the Court concludes that the defendant's searches were adequate and grants summary judgment to the defendant on Count Eight.

   **e.    Counts Ten & Eleven**

The Court next considers the adequacy of the searches conducted for several substantively identical FOIA requests in Counts Ten and Eleven.  In September 2019, the plaintiffs requested "a copy of the A[ppeal] C[ase] M[emo] related to LTR105C dated March 25, 2019, for [the] tax period [that] ended [on] December 31, 2014."  Am. Compl. ¶ 216 (Count Ten).  On or around the same date, the plaintiffs then requested "a copy of the A[ppeal] C[ase] M[emo] related to LTR105C dated March 13, 2019, for [the] tax period [that] ended [on] December 31, 2015."  Id. ¶ 465 (Count Eleven).  An LTR105C "is an IRS form letter that notifies a taxpayer that the [defendant] had disallowed the taxpayer's claim for a credit."  Def.'s

Mot., Ex. (Gilliard Decl.) ¶ 29. Both requests were similarly assigned to Ms. Gilliard who

conducted multi-step searches in response to the plaintiffs' requests. See Def.'s Mem. at 40.

Specifically, Ms. Gilliard: (1) "searched IDRS—including by entering the TXMODA command

code—for any indication of an appeal to the IRS Appeals Office;" (2) "[consulted with her

colleague,] Mr. [Timothy] Ritter[, who] had searched [another system] for any responsive

records;" (3) "reviewed the TXMODA transcript and [ ] followed up on the only lead [she] had

seen (which was the April 8, 2019[, TXMODA] entry);" (4) "made a request to the [Federal

Records Center] [(')FRC[')]];" and (5) "searched previous FOIA requests to confirm whether

there were any similar FOIA requests from [the p]laintiffs that had located any records that

would be responsive to this request[.]" Def.'s Mot., Ex. (Gilliard Decl.) ¶ 41. Ms. Gilliard then

conducted substantially the same search for the plaintiffs' FOIA request in Count Eleven, but

again no responsive records were found as a result of these searches either. See id., Ex. (Gilliard

Decl.) ¶¶ 41, 61.

      On December 21, 2019, the plaintiffs seemingly filed a duplicative FOIA request (also

part of Count Ten), see Am. Compl. ¶ 439; however, this time, the plaintiffs attached a copy of

the LTR105C, "thereby provid[ing] substantially more information than had [the p]laintiffs' first

FOIA request that Ms. Gilliard handled[,]" Def.'s Mem. at 44; see Def.'s Mot., Ex. (Bess Decl.)

¶ 50 (explaining the information that the LTR105C provided as a basis for conducting the search

for responsive records). This request was then assigned to Disclosure Specialist Bess who also

conducted a multi-step search that involved consulting with (1) the IRS Appeals Office

considering the nature of the plaintiffs' request, see Def.'s Mot., Ex. (Bess Decl.) ¶¶ 55–60

(detailing her consultations with employees in the IRS Appeals Office), and (2) the IRS Return

Integrity Verification Operations unit known as "RIVO," see id., Ex. (Bess Decl.) ¶¶ 62–71

(detailing her consultations with employees in RIVO).  Based on the various consultations and "double-check[ing,]" <u>id.</u>, Ex. (Bess Decl.) ¶ 71, of some of the locations she had already searched, Ms. Bess concluded that she could not locate any records that were responsive to the plaintiffs' request, <u>see id.</u>, Ex. (Bess Decl.) ¶¶ 61, 72–73.

The plaintiffs largely fail to respond to the defendant's explanations regarding the first request in Count Ten and entirely ignore the defendant's explanations regarding the request in Count Eleven.  They instead theorize that because of appeals documents released in another FOIA case, and additionally because they physically sent other appeals to various units within the defendant agency, the searches in this case should have uncovered an appeal memorandum responsive to the FOIA request in Count Ten.  <u>See</u> Pls.' Mem. at 46–47.  However, the defendant explains why, in this case, such a document would not have been located—<u>viz.</u>, because the plaintiffs were not entitled to appeal rights due to advancing a frivolous position that they had been entitled to a tax credit.  <u>See</u> Def.'s Mot., Ex. (Bess Decl.) ¶ 71 (explaining that the plaintiffs were notified in the LTR105C included in their FOIA request that the defendant denied the plaintiffs' claim for a tax credit because they "based [their] claim on a frivolous position that isn't supported by law").  Thus, again, the plaintiffs' speculative claims do not cast any doubt that overcomes the good faith presumption afforded to the declarations of Ms. Gilliard and Ms. Bess.  <u>See</u> <u>Truitt</u>, 897 F.2d at 542.  Accordingly, the Court concludes that all of the above referenced searches were adequate, and the Court grants summary judgment to the defendant on Counts Ten and Eleven.

### f.    Count Thirteen

The Court next addresses the adequacy of the search in response to the plaintiffs' FOIA request in Count Thirteen.  In this request the plaintiffs sought "a copy of [IRS] Form 8278

<u>Assessment and Abatement of Miscellaneous Civil Penalties</u> for [the] tax period ending [on] December 31, 2017." Am. Compl. ¶ 527. The IRS form the plaintiffs seek "is an adjustment document used for manual assessments or abatements of miscellaneous civil penalties that are not subject to deficiency procedures." Def.'s Mem. at 53–54; <u>see</u> Def.'s Mot., Ex. (Gilliard Decl.) ¶ 66. Specifically, "Form 8278 is used to assess or abate civil penalties, including on the Master File for taxpayers (i.e. on IDRS 'MFT>55' accounts)." Def.'s Mem. at 54. After this request was assigned to Ms. Gilliard, she discovered that a $10,000 civil penalty had been imposed on the plaintiffs for their 2017 tax year. <u>See</u> Def.'s Mot., Ex. (Gilliard Decl.) ¶ 68. This discovery led Ms. Gilliard to complete "a Form 2275-A, [otherwise called a] <u>Records Request,</u> <u>Charge and Recharge</u>, requesting that the [Federal Records Center] provide any records related to [the specific Document Locator Number]" associated with the civil penalty imposed on the plaintiffs for tax year 2017. Def.'s Mem. at 54; <u>see</u> Def.'s Mot., Ex. (Gilliard Decl.) ¶ 69. Soon thereafter, the Federal Records Center sent Ms. Gilliard the single page that was discovered, <u>see</u> Def.'s Mem. at 54, and on that same date, the defendant released the document to the plaintiffs, <u>see</u> <u>id.</u>; Def.'s Mot., Ex. (Gilliard Decl.) ¶ 71. Although the document was not the specific form sought by the plaintiffs, Ms. Gilliard noted that the document contained the code "NSD", which means "no source document." Def.'s Mot., Ex. (Gilliard Decl.) ¶¶ 74–75. Thus, "[Ms.] Gilliard concluded that, because there was 'no source document' for the $10,000 civil penalty assessed, there would be no Form 8278 or other related records responsive to [the p]laintiffs' FOIA request." Def.'s Mem. at 55; <u>see</u> Def.'s Mot., Ex. (Gilliard Decl.) ¶¶ 76.

The plaintiffs downplay the fact that the Form 8278 they sought was released to them in response to their separate Count Seven FOIA request, arguing that despite that purported "unwitting release," the search conducted for it was inadequate. <u>See</u> Pls.' Mem. at 56; <u>see also</u>

Def.'s Reply, Ex. (3d Keaton Decl.) ¶ 12 (confirming that the form the plaintiffs received in response to the Count Seven FOIA request is in fact the Form 8278 that they sought in their Count Thirteen request). However, the question is not whether documents are produced pursuant to a specific search successfully, but rather the question is simply "whether the <u>search</u> for those documents was <u>adequate</u>." <u>Weisberg</u>, 745 F.2d at 1485. Therefore, because the document the plaintiffs sought was recovered pursuant to another request does not suggest that the search conducted for this specific request was inadequate. <u>See</u> <u>Fischer v. U.S. Dep't of Just.</u>, 723 F. Supp. 2d 104, 109–10 (D.D.C. 2010) ("Even [a] plaintiff's showing of specific responsive documents that exist and were not produced does not rebut the presumption of good faith accorded to agency affidavits.") (citing <u>Nation Mag. v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995)). As the defendant emphasizes, Form 8278 was released to the plaintiffs on two different occasions because, in Count Seven, the plaintiffs included issue numbers in their request.[7] <u>See</u> Def.'s Reply, Ex. (3d Keaton Decl.) ¶ 11 ("[I]n response to [i]ssue [n]umbers 1450729 and 1450746, [Mr. Keaton's] search located[,] and the [defendant] subsequently intentionally released[,] two copies of Form 8278 for [the p]laintiffs' 2017 tax year."). On the other hand, as to Count Thirteen, the plaintiffs did not include any issue numbers and consequently, Form 8278 was not recovered in the search pursuant to this request. Moreover, Ms. Gilliard reasonably considered that her inability to find a Form 8278 was not a "surprise[,]"

---

[7] The Court notes that the request in Count Seven succeeded the request in Count Thirteen, despite their numeration in the Amended Complaint. <u>See</u> Am. Compl. ¶ 151 (stating that the Count Seven FOIA request was submitted on January 3, 2020); <u>see also</u> <u>id.</u> ¶ 527 (stating that the Count Thirteen FOIA request was submitted on September 20, 2019). Although not directly on point here, an agency has typically satisfied its obligations under the FOIA when documents are recovered after subsequent searches are conducted pursuant to the same request. <u>See, e.g.,</u> <u>Hodge v. Fed. Bureau of Investigation</u>, 703 F.3d 575, 580 (D.C. Cir. 2013) ("[B]y the time a court considers the matter, it does not matter that an agency's <u>initial</u> search failed to uncover certain responsive documents so long as subsequent searches captured them.").

as "not every assessment or abatement of a miscellaneous civil penalty results in the generation of a Form 8278." Def.'s Mot., Ex. (Gilliard Decl.) ¶ 77.

Based upon the information that <u>was</u> provided in this FOIA request, and the detailed search in which Ms. Gilliard engaged while utilizing that information, the Court concludes that the search was adequate in response to the request in Count Thirteen. Accordingly, the Court grants summary judgment to the defendant as to Count Thirteen.

g.    **Count Fourteen**

Finally, the Court considers the adequacy of the defendant's search conducted in response to the plaintiffs' FOIA request in Count Fourteen of the Amended Complaint. In Count Fourteen, the plaintiffs sought "a copy of Activity Documents related to [forty-one] IDRS entries in TXMODA for Activity CORRRCVD or related activity such as REASSIGN." Am. Compl. ¶ 539. According to Ms. Gilliard, the employee assigned to this request, "'CORRRCVD' means 'Correspondence Received' and not 'Correction Received.'" Def.'s Mot., Ex. (Gilliard Decl.) ¶ 84. Thus, Ms. Gilliard understood the plaintiffs' "request to be asking for the correspondence from [the p]laintiffs, and any related records, that the [defendant] had received and then acted upon on the dates listed in the FOIA request." <u>Id.</u>, Ex. (Gilliard Decl.) ¶ 84. Ms. Gilliard first tried calling the plaintiffs on two occasions "to confirm what records they were requesting, but [the p]laintiffs did not respond to either of her voicemail messages." Def.'s Mem. at 56; <u>see</u> Def.'s Mot., Ex. (Gilliard Decl.) ¶ 85.

Ms. Gilliard therefore proceeded with the search without additional input from the plaintiffs by employing a number of steps to locate responsive records. <u>See</u> <u>id.</u>, Ex. (Gilliard Decl.) ¶¶ 87–88 (explaining that Ms. Gilliard consulted with another employee to search the defendant's database where some correspondence with taxpayers is maintained and no

responsive records were found); id., Ex. (Gilliard Decl.) ¶¶ 89–90, 93 (explaining that Ms. Gilliard conducted a separate search through the use of transaction codes, which occasionally have "associated correspondence with [a] taxpayer"); id., Ex. (Gilliard Decl.) ¶ 94 (conducting a search of available records that had been recovered from prior FOIA requests made by the plaintiffs). Ms. Gilliard ultimately concluded that there was no "other location that could reasonably be search[ed] for records responsive to [the p]laintiffs' FOIA request[,]" and issued them a final determination letter stating that no responsive records were located. Id., Ex. (Gilliard Decl.) ¶ 95.

Here, again, the Court concludes that the defendant's search for responsive records was reasonable despite the inability to discover any documents. See Wilbur v. Cent. Intel. Agency, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[An] agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that [it] conducted an adequate search[.]"). The plaintiffs believe that the defendant is aware of responsive documents but is "intentionally blocking" their ability to access the responsive records. Pls.' Mem. at 57. However, as the Court earlier indicated, the plaintiffs' speculation does not defeat the good faith presumption afforded to the defendant's declarant. See SafeCard Servs., 926 F.2d at 1200. Moreover, the plaintiffs do not actually contest Ms. Gilliard's search—rather, they argue that the defendant should have searched another location for responsive records. See Pls.' Mem. at 59. To reiterate, the plaintiffs cannot dictate the databases the defendant must search for responsive records. See Mobley, 806 F.3d at 582. Accordingly, the Court concludes that the search in response to the plaintiffs' Count Fourteen FOIA request was reasonable, and, therefore, grants summary judgment to the defendant on Count Fourteen.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants the defendant's motion to dismiss or for summary judgment and denies the plaintiffs' cross-motion for summary judgment.

**SO ORDERED** this 14th day of March, 2025.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.